IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01046-RBJ

In Re:

EPIC ENERGY RESOURCES, INC. and
EPIC INTEGRATED SERVICES, INC.,

    Appellants,

v.

TERRACE POINT PARTNERSHIP, LLC,

    Appellee.

---

ORDER

---

This is an appeal from orders of the bankruptcy court in bankruptcy cases No. 11-15521 and No.11-15523, jointly administered as No. 11-15521-MER. The case is before the Court on (1) appellants/debtors' appeal from an order issued April 5, 2012; and (2) appellee/creditor's motion for an order requiring payment, essentially an appeal for an order of the bankruptcy court issued August 8, 2012 [docket #15]. The issues have been fully briefed. Neither party has requested oral argument.

**Facts**

Epic Energy Resources, Inc. ("Epic") was incorporated in 1989 under the name San Juan Financial. In March 2006 it changed its name to Epic Capital Group, Inc. In April 2006 it became active in energy related activities including consulting, engineering, and oil and gas production. Epic operated through wholly-owned subsidiaries The Carnrite Group, LLC; Pearl Investment Company and its wholly owned subsidiaries (collectively "Pearl"); and Epic

Integrated Solutions, LLC. In December 2006 Epic changed its name to its present name, Epic Energy Resources, Inc. In December 2009 Epic merged The Carnrite Group and Epic Integrated Solutions into Pearl and renamed Pearl as "Epic Integrated Services, Inc. ("Integrated"). R. 303-304.

On April 27, 2006 Pearl Development entered into an office lease with Terrace Point Partnership ("TPP"). R. 275. Under this lease TPP as landlord leased 15,484 square feet of commercial office space in Jefferson County, Colorado to Pearl Development for a term of 61 months (through July 31, 2011) at an monthly rental rate of $19,032.41, with a formula for modification of the rent from time to time. *Id.* at 275-76. An addendum in 2007 added 15,068 square feet for a 61-month term at an initial monthly rental rate of $21,032.41. R. 298. According to TPP there actually were three separate leases for two floors and a storage area. Response Brief [#9] at 6. I do not know whether the leases were formally assigned to Epic and Integrated or simply assumed during the course of the various transactions and name changes. For present purposes the parties do not dispute that Epic and Integrated were parties to what they refer to as the lease.

Sometime before November 30, 2010 appellants vacated the space and stopped paying rent. On that date TPP filed a suit for breach of contract (failure to pay rent) in the Jefferson County, Colorado District Court. The suit named Epic, Integrated, three Pearl entities and Patrick A. Redalen (as guarantor) as defendants. R. 120-21. On January 15, 2011 (reissued January 18, 2011) the state court entered a default judgment against Epic and Integrated, including their various Pearl trade names, for past due rent, late fees, attorney's fees and costs totaling $332,238 plus contractual interest at 12% per annum. R. 123-24. The judgment

provides that "Plaintiff may apply to the Court for additional damages and judgments based on amounts accruing pursuant to the applicable lease documents in the future." R. 124.

On January 22, 2011 Epic delivered the keys to the exterior of the building and security cards for access to the rented space, together with a notice regarding certain abandoned furniture, to TPP's property manager. R. 165.

**Proceedings Below**

On March 18, 2011 Epic and its subsidiary Integrated filed voluntary petitions in bankruptcy under Chapter 11 of the Bankruptcy Code. On May 10, 2011 Epic and Integrated ("Debtors") filed a "Motion to Reject Nonresidential Real Property Lease" pursuant to section 365 of the Code. R. 81. The motion states that "Debtors have determined that it is in the best interest of parties in interest to reject the Lease as of the Petition Date. The Debtors no longer utilize the office space located at the Premises." R. 82. Also, [b]ecause the office space located at Premises is no longer being utilized, the Debtors wish to eliminate the cost in order to benefit creditors, the estate and the reorganization effort." *Id.* The motion and notice of an objection deadline of May 23, 2011 were served on TPP and its counsel. R. 86-87.

TPP did not object, apparently because its counsel thought that a response was unnecessary. On May 31, 2011 Debtors filed a "Certificate of Non-Contested Matter," noting that no objection had been filed. They tendered a form of order. R. 88-89. The court, Hon. Michael E. Romero, United States Bankruptcy Judge, signed the tendered order on June 7, 2011. The order deemed the lease rejected as of the petition date.

Undaunted, TPP on June 16, 2011 filed a "Motion for Order Requiring Prompt Payment by the Debtor Pursuant to 11 U.S.C. § 365(d)(3)." R. 91. The motion sought an order requiring the Debtors promptly to pay rent owed to TPP from the date of the filing of the petition (March

3

18, 2011) to the date of the court's order authorizing Debtors to reject the lease (June 7, 2011) in the amount of $127,987.26. R. 91-92. The motion made no mention of the fact that the court had made the rejection of the lease retroactive to the petition date. Apparently TPP had missed that detail. The Debtors, of course, quickly pointed out that because the rejection date was the petition date, no rent was owed.

The sleeping giant eventually awakened. On September 6, 2011 TPP filed a motion pursuant to Fed. R. Civ. P. 60 for relief from the June 7, 2011 order. R. 105. Arguing that the order was inconsistent with decisional law and must have been the product of a mistake or inadvertence, TPP asked the court to reset the effective date of the rejection of the lease to June 7, 2011, the date the rejection order was entered.

The bankruptcy court held a hearing on the Rule 60 motion on October 26, 2011. After receiving arguments and testimony from TPP's counsel, the court indicated that it had some question as to whether a basis for a Rule 60 motion had been established but concluded that it need not decide that issue. Transcript of October 26, 2011 hearing ("Tr.") at 46. Rather, exercising a court's inherent power to review its own orders sua sponte, the court found that it had not appreciated the relief being sought in the motion to reject; that the case law authorizes courts to make the date of rejection of a lease retroactive but only in extraordinary circumstances; that the motion did not indicate that extraordinary relief was being requested or provide a justification for such extraordinary relief, which contributed to the court's error in granting the motion; and that the court would modify the rejection order to deem the rejection to have occurred as of the date of that order rather than the petition date. Tr. at 45-47. The court denied the Rule 60 motion as moot. Tr. at 48.

The court indicated, however, that that was not necessarily the final word on the subject. Rather, "[t]here are some indications and representations that the landlord was very well are of the fact that the Debtor was not on the premises as of the date of filing the petition, and in fact the keys were turned over to the lender. That may be a firm basis [for making the rejection date retroactive] if established under evidence properly received by this Court for a modification of the claim or a proper challenge to the claim. But we need to get that information before the Court in a proper fashion." Tr. at 47. Accordingly, "I am making no rulings as to the validity of any post petition claims for lease payments." *Id.*

Thus, the final chapter was far from being written at that point. On November 8, 2011 the Debtors filed a motion to reconsider the October 26, 2011 order and for leave to amend the Debtors' motion to reject the lease. R. 222. TPP responded. R. 246. The Debtors replied. R. 254. These filings provided both legal argument and evidence in the form of attached exhibits. TPP then provided more authority. R. 264. The Debtors provided more authority. R. 266. The court held another hearing, on December 20, 2011, limited to legal argument.

On April 5, 2012 the court issued its written order. R. 352-56. The court granted the Debtor's motion for leave to amend their motion to reject the lease. R. 360. However, it denied the motion to reconsider its October 26, 2011 order. R. 361. By way of explanation the court stated:

> The Court has considered the additional evidence, and the facts and equities of this case, including the additional evidence and argument, and finds there are no unusual or extraordinary circumstances to justify the granting to such a request. Specifically, the Court finds the Debtors knew, because of the filing of the complaint in the Jefferson County District Court, that TPP was intending to pursue rent although the Debtors, as noted in the complaint, had vacated the premises. This information should have prompted the Debtors to file a motion to reject the TPP lease with or shortly after the petition. Instead, they waited nearly sixty days. Accordingly, the Court finds the Debtors have not shown

    circumstances supporting the granting of a motion to reconsider the Court's
    October 26, 2011 Order.

*Id.*

    Debtors filed the present appeal on April 18, 2012. On May 3 2012 TPP filed another motion in the bankruptcy court for an order requiring the Debtors immediately to pay $127,987.26 (the amount due between the petition and rejection dates). [CM/ECF docket # 15-1]. The Debtors of course opposed that motion. This time TPP didn't fare so well. On August 8, 2012 the court issued an order denying the motion for immediate payment. [#15-2]. The court acknowledged that section 365(d)(3) creates the potential for post-petition rent to be considered as an administrative claim. However, on March 5, 2012 the court had entered an order confirming the Debtor's Joint Plan of Reorganization. That Plan provided that holders of administrative claims must be paid in full on the effective date of the Plan. The bad news for TPP was that it had not obtained payment of its administrative claim for the post-petition rent. The court reasoned as follows:

    Unfortunately, this statutory provision (section 365(d)(3)) imposes a
    responsibility without an accompanying remedy. It offers no relief to a lessor
    who does not obtain payment while a trustee or debtor-in-possession is still the
    fiduciary in the case. When a plan is confirmed, the plan serves as a new contract
    among the reorganized debtors and their creditors. Thus, it is the plan, not § 365,
    that controls what happens to a lessor's unpaid claim.

August 8, 2012 Order [#15-2] at 4. The court declined to order Debtors to post a bond pending appeal.

    TPP promptly appealed from that order. In its "Motion for Order Requiring Payment and Alternatively for Bond Pending Appeal, and for Review of Bankruptcy Court Orders" [#15] TPP asked this Court either to order prompt payment or to require that the Debtors post a bond pending this appeal.

**Standard of Review**

The bankruptcy court's findings of fact will not be set aside unless they are clearly erroneous. Fed. R. Bankr. P. 8013. Conclusions of law are reviewed de novo. *In re White,* 25 F.3d 931, 933 (10th Cir. 1994). On a mixed question of whether the facts satisfy the law, the court conducts a de novo review if the question is primarily legal, but it applies the clearly erroneous standard if the question is primarily factual. *In re Wes Dor,* 996 F.2d 237, 241 (10th Cir. 1993). The court's exercise of discretion is reviewed for abuse of discretion. *Cf. Bisetti's Holdings, Inc. v. Connolly,* No. 08CV592, 2009 WL 890690, at *2 (D. Colo. March 31, 2009). The court's entry of a nunc pro tunc approval of a motion is reviewed for abuse of discretion. *See In re At Home Corp.,* 392 F.3d 1064, 1067 (9th Cir. 2004).

**Conclusions**

**A. <u>Debtors' Appeal</u>**.

Despite the voluminous briefing, the legal rules applicable here are not complex. The trustee, or in this case the debtor in possession, must perform all the obligations of the debtor under any unexpired lease of non-residential property until such lease is assumed or rejected. 11 U.S.C. § 365(d)(3). Rejection of a pre-petition lease is ordinarily effective on the date of the court order approving the rejection. *See, e.g., In re Amber's Stores, Inc.,* 193 B.R. 819, 826-27 (Bankr. N.D. Tex 1996). The court may, based on the equities in the case, make the effective date retroactive. *In re CCI Wireless, LLC,* 297 B.R. 133, (D. Colo. 2003); *In re Amber's Stores,* 193 B.R. at 827 (court deemed the rejection effective at the date of the petition where the debtor vacated the premises and turned over the keys a month before filing the petition). This is a matter of the court's discretion. *See, e.g., Thinking Machines Corp. v. Mellon Financial Services Corp.,* 67 F.3d 1021, (1st Cir. 1995); *In re Chi-Chi's, Inc.,* 305 B.R. 396, (Bankr. D. Del. 2004).

The court should exercise its discretion to make the date retroactive only in exceptional circumstances. *Id.* at 140. *See In re O'Neil Theatres, Inc.,* 257 B.R. 806, 808 (Bankr. E.D. La. 2000).

The parties engage in finger pointing in their briefs. In fact, both parties and the court contributed to the situation we now face. The Debtors for whatever reasons did not file a motion to reject the lease with their petition. When they filed their motion to reject 53 days later they did not provide any extraordinary reasons for retroactive application. They stated that "it is in the best interest of parties in interest to reject the Lease as of the Petition Date." Which parties in interest? Why did the Debtors wait 53 days to seek this relief? What is unusual, much less extraordinary, about this case? They stated that they no longer utilize the space. That can be a reason to consider retroactivity, but it certainly does not make it automatic. They added, "the Debtors wish to eliminate this cost in order to benefit creditors, the estate and the reorganization effort." Yes, eliminating an obligation benefits creditors (except this creditor) and the estate. That is true of any rejection of a lease.

TPP was served with the motion and a notice of a deadline for a response. However, it was asleep at the wheel. No response was filed. Even after the court entered the tendered order, TPP remained silent. Its motion for an order requiring prompt payment of rent owed between the date of the petition and date of the court's order rejecting the lease did not address the retroactivity feature. Even after the light bulb went on (with an assist from the Debtors who "reminded" TPP that the rejection was retroactive), TPP did not file its Rule 60 motion for more than two months.

The court entered the proposed order without considering whether reasons for such relief had been provided. As indicated, the Debtors had provided essentially nothing. TPP had failed

to respond to the motion. The court signed a short, undisputed, seemingly routine, tendered order. The court apparently paid little attention to its substance. To his credit, when this snafu was brought to the court's attention the judge acknowledged that it was an oversight and took responsibility for it. So far as I can determine from the record, the bankruptcy judge is the only one of the three protagonists who has clearly owned up to his contribution to the situation.

The parties have devoted some of their briefing to a debate about whether the bankruptcy court had authority to vacate his June 7, 2011 order during the October 26, 2011 hearing. I conclude that he certainly did have such authority. Although he did not rest his decision on Rule 60, he could have. Rule 60 of the Federal Rules of Civil Procedure is, with exceptions not relevant here, applicable in a bankruptcy proceeding. Fed. R. Bankr. P. 9024. Rule 60(a) permits the court to correct a mistake arising from oversight on its own. Even without that specific grant of authority, however, a judge has inherent power to correct his mistakes, unless of course he loses jurisdiction due to an appeal.

Here, the bankruptcy judge realized that he had signed a tendered order without any showing of good cause for the extraordinary remedy of making the rejection retroactive to the petition date, 81 days before the date of his order. He corrected the mistake by revising the effective date to the date of the order of rejection. The court left the door open to reconsideration if grounds for the extraordinary remedy could be provided. He later granted the Debtors' motion to amend and supplement their motion to reject the lease. However, the court ultimately concluded that the Debtors had not provided a sufficient basis for the relief they sought. This was an exercise of discretion based on a finding of fact.

The court found that the Debtors were fully aware when they filed their petition, because of the state court lawsuit, that TPP intended to pursue unpaid rent. He found that the Debtors

9

nevertheless waited nearly 60 days to file a motion to reject the lease. These findings were not clearly erroneous.

The Debtors emphasize the fact, if it is a fact, that they vacated the premises prior to November 30, 2010. When the court granted the Debtors' motion for leave to amend their motion to reject the lease, it acknowledged that, according to the Debtors, they surrendered possession at least two months prior to the petition date. R. 354. However, the facts of record indicate that the Debtors did not surrender the keys or access cards until January 22, 2011. Accordingly, there was a period of at least 53 days when the Debtors formally had possession but did not pay rent.[1] In its state court suit, TPP alleged (and the Debtors by defaulting did not dispute) that $330,588.50 was owed in rent and late fees as of November 30, 2010. That would indicate that the period of time during which the Debtors formally had possession but did not pay rent was much longer than 53 days.

In some circumstances courts have decided that actual physical vacation of premises was sufficient to justify retroactive rejection, although I am not aware of a decision to make the date of rejection retroactive for such a lengthy period as Debtors seek here. In any event, I conclude that there is a basis in the facts in this record for the court to have found that the circumstances here were not exceptional. The Court concludes that the bankruptcy court's exercise of its discretion not to make the date of rejection of the lease retroactive to the petition date was not an abuse of discretion.

Finally, I will mention two other issues in passing. First, the landlord had a duty to mitigate its damages by making good faith efforts to find a new tenant for the space. If the facts had shown that TPP did nothing and simply sat back and let Debtors' rental obligation increase,

---

[1] To avoid possible confusion I note the coincidence that the time between the filing of the state court lawsuit and the formal surrender of possession (53 days) is the same as the time between the filing of the bankruptcy petition and the filing of the motion to reject the lease (53 days).

that would be a factor that the bankruptcy court and on review this court would consider in weighing the equities.  However, the Debtors have not suggested in their briefs that TPP failed to attempt reasonably to mitigate its damages.  In fact, they mention that TPP did not have a tenant ready, willing and able to lease the premises.  Opening Brief [#8] at 36.

Second, the parties have not addressed the impact, if any, that this order could have on other creditors.  Again, in exercising its equity jurisdiction, the court might have considered that factor.

### B. TPP's Appeal.

What TPP characterizes as a "Motion for Order Requiring Payment and Alternatively for Bond Pending Appeal, and for Review of Bankruptcy Court Orders" is, in substance, an appeal from the bankruptcy court's order of August 8, 2012.  Although the parties are mired in procedure, I elect to deal with this appeal now on its merits.

The August 8, 2012 order rendered the April 5, 2012 order that the date of rejection was June 7, 2012 a pyrrhic victory for TPP.  "Unfortunately," the bankruptcy court concluded, section 365(d)(3) offers no relief, because TPP did not obtain payment before the Joint Plan of Reorganization was confirmed.  The statute might not provide a remedy.  Similarly the statute did not provide for, or prohibit, retroactive rejection of a lease.  Retroactive rejection turns on the application of principles of equity.  Equity likewise compels a different result that what was decreed here.

Rent due during the first 60 days post-petition must be paid in a timely manner.  *In re Western Monetary Consultants,* 100 B.R. 545, 546 (Bankr. D. Colo. 1989).  Timely manner means, at least, that a debtor's obligations arising during the 60 days post-petition must be paid at the end of the 60-day period.  11 U.S.C. § 365 (d)(3).  For this period the provisions of § 503

11

concerning administrative expenses do not apply. Rent coming due after the 60-day period is determined according to its fair and reasonable value. The contract rate is rebuttably presumed to reflect fair and reasonable value, but the amount can be adjusted to reflect the debtor's actual use of the premises. *In re Western Monetary Consultants*, 100 B.R. at 547.

TPP filed a motion for prompt payment nine days after the court's June 7, 2011 order rejecting the lease. Had it not been for the retroactivity order, TPP would have been entitled to prompt payment of the rent owed for the first 60 days after the petition (March 18 through May 17, 2011). It would have been entitled to payment of rent for the period May 18, 2011 through June 7, 2011 at the fair value of the premises, which is rebuttably presumed to be the agreed contract rate.

Upon the court's October 26, 2011 modification of the rejection date to June 7, 2011, the first 60 days' rent became due. The remaining 21 days of rent (May 18-June 7, 2011) also became due, subject to the Debtors' right to attempt to establish a fair value different from the contract rate. That occurred without the necessity of TPP's filing another motion for prompt payment. TPP was not legally required to file such a motion in the first place.

TPP eventually did, on May 3, 2012, file another motion for an order requiring prompt payment. By that time the Debtors' Joint Plan of Reorganization had been confirmed, which is what ultimately motivated the court to deny the motion. I attribute the filing of the May 3, 2011 motion to TPP's uncertainty as to what it should do. However, this Court holds that this was an unnecessary and meaningless act. The payment became due promptly upon the court's order of October 26, 2011. The Debtors in substance argue that because they did not pay, and their reorganization plan was confirmed before they paid, they do not have to pay. Equity does not applaud a Catch 22. I prefer the maxim that where there is a wrong, there is a remedy.

TPP asserts that the amount owed is $127,987.26. This amount is documented at R.94. It is calculated at the lease rate plus contractual late fees. It likely is a correct or substantially correct number, subject to the Debtors' right to attempt to establish a fair value rate for the last 21 days of the relevant period. Accordingly, this Court holds that payment at the lease rate plus contractual late fees is immediately due from Epic and Integrated, or their successors, jointly and severally for the period March 18, 2011 to May 17, 2011. The bankruptcy court is directed to enter judgment accordingly. If a hearing is requested on the amount owed for the period May 18, 2011 through June 7, 2011, then the amount will be due immediately upon the court's determination of the amount. If a hearing is not requested, then the amount for that period is due with payment of the amount for the first 60 days.

No stay will be entered without the posting of a bond, in a form acceptable to the Court, for 150% of the claimed amount due. Prejudgment interest runs at the contract rate with respect to the first 60 days and the statutory rate of eight percent compound annually with respect to the last 21 days from the date of wrongful withholding, which the Court deems to be October 26, 2011. Post-judgment interest at the statutory rate should be added from the date of the judgment.

**Order**

1. The bankruptcy court's order of April 15, 2012 holding that the date of rejection of the lease was June 7, 2011 is AFFIRMED.
2. Motion # 15 is GRANTED, subject to the Court's discussion in this order.
3. The bankruptcy court's order of August 8, 2012 denying TPP's motion for immediate payment is REVERSED.
4. This matter is remanded to the bankruptcy court for further proceedings consistent with this order.

14

DATED this 4th day of February, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge